CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

NOV -2 2015

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DARRELL EUGENE FARLEY,          )          Civil Action No. 7:14-cv-00270
    Plaintiff,                   )
                                 )
v.                              )          **MEMORANDUM OPINION**
                                 )
SGT. STOOTS, et al.,            )          By:   Hon. Jackson L. Kiser
    Defendants.                  )                Senior United States District Judge

Darrell Eugene Farley, a Virginia inmate proceeding pro se, filed a second amended

complaint (ECF No. 62) pursuant to 42 U.S.C. § 1983, naming various officials of the Virginia

Department of Corrections ("VDOC"), Green Rock Correctional Center ("Green Rock"), and

Powhatan Correctional Center ("PCC") as defendants. Plaintiff and Defendants have timely filed

motions for summary judgment (ECF Nos. 162, 164, 171, and 183) and responses (ECF Nos. 183,

184, 185, 187, 188, 189, and 193), and the matter is now ripe for disposition.[1] After reviewing the

record, I grant Defendants' motions for summary judgment.

---

[1] Plaintiff's motion for an extension of time (ECF No. 179) is granted to the extent that his "Memorandum and Exhibit of Sexual Assault in Prison" (ECF No. 193) is considered in opposition to Defendants' dispositive motions. None of Plaintiff's numerous other responses (ECF Nos. 191, 192, 195, 200, 201, 202, 203, and 204) can be considered timely filed in response to Defendants' dispositive motions, and Plaintiff has not sought to have the court consider them out of time. Cf. Fed. R. Civ. P. 6(b)(1)(B); ECF Nos. 166, 179; see Jourdan v. Jabe, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a pro se litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer); Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989) (stating that pro se litigants are "subject to the time requirements and respect for court orders without which effective judicial administration would be impossible"); McDonald v. Head Criminal Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988) ("[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.").

I note that, except for some copies of grievances and medical records, Plaintiff's other responses and motions for summary judgment consist of argument without relevant evidence. Furthermore, I note that Plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009). To the extent Plaintiff asks for a default judgment in one of his responses because he believes defendant Faw did not work under color of state law or timely respond to a complaint or court orders, the request is denied as baseless. See, e.g., Fed. R. Civ. P. 55; Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994).

## I.

Plaintiff alleges the following facts as the bases of his unenumerated claims. For easier comprehension and reference, I separate the allegations into eighteen claims.

- Claim 1(a)

During two separate incidents at PCC, Plaintiff was raped by an inmate, and the blood of another inmate who committed suicide "contacted" Plaintiff's skin and mouth. (Second Am. Compl. ¶ 24.) Because Plaintiff was in the receiving pod at PCC at this time, he had no call box in his cell and had to rely on officers in the pod for protection and requests for services. (Id. at ¶ 23.)

- Claim 1(b)

Very soon after these incidents, Plaintiff requested an emergency grievance form from defendants Officer Wadel and Officer Green in order to receive medical care for the exposure to blood and semen and for bleeding from his anus and genitals. (Id. at ¶ 24.) The officers denied "[Plaintiff] needed medical care."

- Claim 2

Upon his arrival at Green Rock on March 12, 2014, Plaintiff asked defendants Unit Manager Wingfield and Counselor Childress for a single cell, but they told Plaintiff that single cells were not available at Green Rock. (Id. at ¶ 25.) Plaintiff filed an emergency grievance on March 30, 2014, expressing concern for his safety due to being bunked with George Persons, a stronger, more violent inmate who insulted and threatened Plaintiff. (Id. at ¶ 25.) Due to Plaintiff's complaints, staff moved Persons out of Plaintiff's cell and into segregation. (Id. at ¶ 25.) On April 2, 2014, Green Rock medical staff took pictures of Plaintiff's injuries from the

2

attack by Persons.[2]  Plaintiff faults defendants Wingfield and Counselor Childress for not putting

Plaintiff in a single cell.

- Claim 3

Inmate Miller replaced Persons as Plaintiff's cellmate.  (Id. at ¶ 26.)  On April 14, 2014,

Miller raped Plaintiff although Plaintiff could not remember the rape clearly because he believes

that he had been drugged, knocked unconscious, or in shock during the rape.[3]  (Second Am.

Compl. at ¶ 26.)  Plaintiff faults defendants Sgt. Stoots, Wingfield, and Childress for not protecting

him.  Plaintiff also faults defendants Sgt. Stoots and Dr. Schneider for not giving him a single cell

because they knew Plaintiff had been a victim of sexual abuse while in prison and as a child.  (Id.

at ¶ 26.)

- Claim 4

While at Green Rock on March 12, 2014, Plaintiff requested "treatment/counseling" for

Post-traumatic Stress Disorder ("PTSD") and sexual abuse.  (Id. at ¶ 27.)  Although defendant

Faw, a Qualified Mental Health Professional ("QMHP"), was aware of his requests for counseling,

treatment did not occur until May 2014.  (Id. at ¶ 27.)

- Claim 5

While in an isolation cell in the Green Rock medical department on April 22, 2014,

Plaintiff fell down and hit the concrete floor.  (Id. at ¶ 29.)  Officer Wilson helped Plaintiff into a

wheelchair and asked Nurse Jones for assistance.  Plaintiff alleges:

---

[2] Plaintiff does not describe in the second amended complaint when or how Persons injured him, but his offender request filed on March 31, 2014, says Persons inflicted a swollen bruise when he "slammed" Plaintiff away from their cell's call box.

[3] Green Rock staff transported Plaintiff to Lynchburg General Hospital for rape treatment.  (Second Am. Compl. ¶ 26.)  Plaintiff had told a nurse that he slept through the rape due to a medication.

3

> [Nurse Jones] was disgruntled because of him asking her to assist me, since other nurses were talking and drinking coffee . . . . Nurse Jones even had concerns in regards to treating. Nurse Cobbs and Nurse Dowdy failed to assist her when she asked them to help because of a possible heart attack . . . . I was seeing spots and lights, roaring head/ears and chest pressure. Another offender (inmate) helped me out [of] the wheelchair so Nurse Jones could examine me. I was in distress sitting for about [five] minutes while Nurse Jones tried to get someone to help me/her. I could of died as precious time passed. X ray was done. Nothing given to me for pain or anything. I was wheeled back to the cell. X ray sent off to be read. I was in serious pain still.

(Id. at ¶ 29.) On April 23, 2014, Plaintiff filed an emergency grievance about the fall and subsequent medical treatment, which Nurse Harris responded to by saying that the emergency grievance did not meet the definition of an emergency and that Plaintiff was scheduled to see the physician. (Id. at ¶ 30.)

- Claim 6

Dr. Schneider and Sgt. Stoots both told Plaintiff, "This is prison"; that they cannot "stop and hold" Plaintiff's hand; and that they would not allow Plaintiff to write to people outside of Green Rock to make the prison "look bad." (Second Am. Compl. ¶ 31.) They also insinuated to Plaintiff that he was gay and deserved to be sexually attacked. (Id. at ¶ 31.)

- Claim 7

Plaintiff asked "mental health" and Dr. Schneider for a "victim advocate" from a rape crisis center, but Dr. Schneider "declined" to help, telling Plaintiff to do "it on [his] own." (Id. at ¶ 32.) Plaintiff alleges that Dr. Schneider and Sgt. Stoots threatened his life and safety. (Id. at ¶ 32.)

4

- Claim 8

While in segregation, Plaintiff could not meet with the chaplain or attend religious services. (Id. at ¶ 33.)

- Claim 9

Plaintiff called the VDOC's Prison Rape Elimination Act ("PREA") hotline on June 8, 2014, to report being raped by inmate Riley because Plaintiff felt QMHP Faw "didn't get [him] help." (Id. at ¶ 34.) The next day, Plaintiff met with defendants Alvis, Dr. Schneider, and QMHP Faw, who all acted "harsh" toward Plaintiff. (Id. at ¶ 34.) Plaintiff was placed in segregation despite bruising and bleeding from his anus because no doctor was on duty and the nurse could not perform a rape examination. (Second Am. Compl. ¶ 34.) Plaintiff alleges he was denied food in segregation and had to eat his own feces. (Id. at ¶ 34.) Plaintiff's emergency grievances about the lack of food and medical care were denied, and "no advocate issued." (Id. at ¶ 34.)

- Claim 10

Plaintiff blames defendant Parks for failing to protect him from the rape because Parks had denied Plaintiff's request for a transfer. (Id. at ¶ 35.)

- Claim 11

Although Plaintiff wrote to Elizabeth Thornton, the VDOC's PREA Coordinator, about sixty times to complain about his treatment, Thornton never replied. (Id. at ¶ 36.) Plaintiff believes all defendants at Green Rock participated in a campaign of harassment as retaliation. (Id. at ¶ 36.)

5

- Claim 12

Plaintiff alleges generally that his "mail and requests / informals [were] returned unanswered," his "mail [was] lost and delayed up to 30 plus days[,]" and that his "legal mail [was] denied." (Id. at ¶ 37.)

- Claim 13

Plaintiff complains that he was not read Miranda[4] rights during "the interviews." (Second Am. Compl. at ¶ 38.)

- Claim 14

Plaintiff complains that he "was denied OP 866.1 inmate grievance procedure at times at both Green Rock and [PCC]." (Id. at ¶ 39.)

- Claim 15

Plaintiff alleges, "The defendant who injured me was in the same pod after I returned to population."[5] Plaintiff also complains that inmate Riley was housed in the same segregation unit at Green Rock after Riley allegedly raped him. (Id. at ¶ 40.)

- Claim 16

Defendant Massenburg, the Institutional Ombudsman at Green Rock, told Plaintiff that Plaintiff was "on thin ice on being put on restrictions to 866.1." (Id. at ¶ 41.) Plaintiff alleges that, when allowed, he used the grievance procedure available. (Id. at ¶ 43.)

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).
[5] Plaintiff does not identify the defendant.

6

- Claim 17

Plaintiff alleges that he "has been unable to get follow up STD, HIV/lab[ ]work done at Green Rock," which he believes should be done in case the inmates Miller or Riley had HIV or a sexually-transmitted disease. (Id. at ¶ 42, 44.)

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Notably, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

## III.

Defendants argue that claims 1(a), 2, 3, and 6 through 17 are barred because Plaintiff failed to exhaust administrative remedies available via Operating Procedure ("OP") 866.1, which is the

7

administrative remedy program for VDOC inmates. OP 866.1 provides inmates the ability to resolve complaints, appeal administrative decisions, and challenge policies and procedures.[6] All issues are grievable except institutional convictions and matters beyond the VDOC's control.

Prior to submitting a grievance, the inmate must make a good-faith effort to informally resolve the issue by submitting an informal complaint form, which is available in housing units. However, an inmate is not required to file an informal complaint to report issues of sexual abuse.

If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident. Only one issue per regular grievance may be addressed, and regular grievances may receive three levels of review. A facility's warden or superintendent conducts the first, "Level I" review. If the inmate is unsatisfied with the Level I determination, the inmate may appeal the determination within five days of receipt to Level II, which is usually done by a regional ombudsman. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the inmate may appeal the Level II determination within five days of receipt to the Deputy Director or Director of the VDOC.[7]

Regular grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days from the date of receipt with instructions, when possible, about how the inmate may remedy any deficiency.[8] An inmate may appeal an intake decision by sending the grievance and the intake decision to a regional ombudsman within five days of receipt. There is no further review of the intake decision.

---

[6] Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities.

[7] A Level I response must be issued within thirty days, and Level II and Level III responses must be issued within twenty days. Expiration of the time limit without issuance of a response at any stage of the process automatically entitles an inmate to appeal to the next level.

[8] A copy of the intake decision is kept in the inmate's grievance file.

8

Notably, an "emergency grievance" is not a step toward exhaustion via the administrative remedy program. The purpose of an emergency grievance is to permit "expedited staff responses to allegations that an [inmate] is subject to a substantial risk of imminent sexual abuse and to situations or conditions which may subject the "inmate" to immediate risk of serious personal injury or irreparable harm." (ECF No. 172-1 at 19.)

A warden may restrict access to administrative remedies if an inmate abuses the system with habitual misuse or excessive filings. An inmate whose access is restricted is still permitted to file at least one informal complaint and one regular grievance per week, and the restriction cannot be imposed for more than ninety days.

Plaintiff did not file regular grievances and appeals or his regular grievances were rejected for non-compliance with OP 866.1 for claims 1(a), 2, 3, and 6 through 17.[9] Filing emergency grievances cannot constitute exhaustion of administrative remedies, and Plaintiff failed to pursue administrative remedies about the issues raised in emergency grievances.[10] Although Plaintiff concludes without support for claims 12 and 14 that grievances were returned unanswered or that administrative remedies were not available, he fails to sufficiently establish that "any defects in exhaustion were . . . procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); Jernigan v. Stuchell, 304 F.3d 1030, 1032-33 (10th Cir. 2002). Even if Plaintiff's access to the administrative remedy program was restricted for up to ninety days, he was still able to file one informal complaint and one regular grievance per

---

[9] Two of the regular grievances attached to the correctional defendants' motion for summary judgment were rejected at intake because of Plaintiff's failure to file informal complaints first. Notably, Plaintiff failed to exhaust available administrative remedies by not appealing the intake decisions, which precludes my further review. Nonetheless, OP 866.1's informal-complaint exemption about sexual abuse did not apply to these two regular grievances because the thrust of these grievances was not to report sexual abuse.

[10] I note that during his four-month confinement at Green Rock, Plaintiff filed at least thirty-four informal complaints. The fact that Plaintiff exhausted three of his claims shows he understood the grievance process and how to exhaust administrative remedies.

week.  Administrative remedies were not made "unavailable" simply due to a weekly limitation or

because staff rejected Plaintiff's grievances for not complying with OP 866.1.  Moreover, Plaintiff

cannot merely cite an unrelated case about a women's prison to prove that administrative remedies

were not available to him at PCC or Green Rock.  Accordingly, the record establishes that Plaintiff

did not exhaust available administrative remedies for claims 1(a), 2, 3, and 6 through 17, and

Defendants' motions are granted for these claims.

## IV.

Defendants concede that Plaintiff exhausted administrative remedies for claims 1(b), 4, and

5, but they argue that they are entitled to qualified immunity and summary judgment.  Qualified

immunity permits "government officials performing discretionary functions . . . [to be] shielded

from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  Once a defendant raises the qualified immunity defense, a

plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right.  Bryant

v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).  For the following reasons, I find defendants are

entitled to qualified immunity and summary judgment for the exhausted claims.[11]

A. Claim 1(b)

Plaintiff complains in claim 1(b) that Officer Wadel and Officer Green did not give him an

emergency grievance form so he could alert medical staff about his alleged need for medical

---

[11] Other than naming Lynchard, Zahorodney, or Mail Clerk Hudson as defendants in the second amended
complaint, Plaintiff does not allege their personal involvement with any of his claims.  Accordingly, these defendants
are entitled to qualified immunity and summary judgment.  See, e.g., Fisher v. Washington Metro. Area Transit Auth.,
690 F.2d. 1133, 1142 (4th Cir. 1982).

attention after being raped and exposed to another inmate's blood.[12]  Deliberate indifference

requires a state actor to have been personally aware of facts indicating a substantial risk of serious

harm and to have recognized the existence of such a risk.  Farmer v. Brennan, 511 U.S. 825, 838

(1994).  "Deliberate indifference may be demonstrated by either actual intent or reckless

disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v.

Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in

question subjectively recognized that his actions were 'inappropriate in light of that risk.'").  "A

defendant acts recklessly by disregarding a substantial risk of danger that is either known to the

defendant or which would be apparent to a reasonable person in the defendant's position." Miltier,

896 F.2d at 851-52.  A medical need serious enough to give rise to a constitutional claim involves

a condition that "has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko

v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Plaintiff fails to allege sufficient facts to state a claim of deliberate indifference by Officer

Wadel or Officer Green.[13]  Nowhere in the second amended complaint does Plaintiff allege that he

informed Officer Wadel or Officer Green about his need for medical treatment or an emergency

grievance form.  Plaintiff alleges, in total, about his conversation with these officers that "Plaintiff

requested from both of the officers (Wadel and Green, both defendants) for an emergency

grievance and for medical." (Second Am. Compl. 3.)  While I may view inferences in a light most

favorable to Plaintiff, I am not permitted to create facts where none were alleged in order to state a

---

[12] Because Plaintiff did not have a call box in his cell, the only way Plaintiff could promptly communicate with the medical department or any staff was via the emergency grievance form from Officer Wadel and Officer Green.

[13] Furthermore, Plaintiff does not have a constitutional right to access the VDOC's grievance system. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

11

viable claim for Plaintiff. See, e.g., Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Plaintiff does not allege enough facts to show Officer Wadel or Officer Green disregarded a substantial risk of danger that was known to them or that would be apparent to a reasonable person in their position. Accordingly, Officer Wadel and Officer Green are entitled to qualified immunity and summary judgment.

B. Claim 4

For claim 4, Plaintiff complains that Dr. Schneider and QMHP Faw did not provide counseling services quickly enough after he arrived at Green Rock on March 12, 2014. Specifically, Plaintiff alleges:

> While at Green Rock on March 12, 2014, [P]laintiff asked for treatment/counseling in regards to PTSD and sexual abuse. Anxiety high and fearing his safety. Treatment never took place until late May 2014. Dr. Schneider and QMHP Faw were aware of this at dozens of requests for counseling. My record shows I am at risk of sexual abuse, suffer depression, [] hypertension, PTSD, Dyslexic, bipolar. Plaintiff was injured dealing with trauma. This violated my 8th amendment because it was cruel and unusual punishment denying/delaying mental health (adequate). Plaintiff suffered badly.

(Second Am. Compl. 4.)

Claim 4 fails to state a claim against Dr. Schneider or QMHP Faw. Plaintiff's claims that Dr. Schneider and QMHP Faw were "aware" of Plaintiff's dozens of requests for counseling, that he was "injured dealing with trauma" and that "this violated his 8th amendment rights because it was cruel and unusual punishment denying/delaying mental health care" are unsupported, conclusory allegations not entitled to an assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

12

Despite Plaintiff's allegation that he did not receive mental health services between March and May 2014, Plaintiff's medical record shows that Plaintiff consulted with a QMHP sixteen times and with a psychiatrist twice in the four months he was at Green Rock. The day after Plaintiff arrived at Green Rock, QMHP Faw assessed Plaintiff's mental health. On March 27, 2014, a QMHP examined Plaintiff because of Plaintiff's request for treatment, and on April 1, 2014, Dr. Schneider conducted a follow up appointment.[14] On April 24, 2014, Plaintiff again saw a QMHP, who noted that Plaintiff denied having any mental health issues. Dr. Schneider saw Plaintiff again on May 2, 2014, after Plaintiff reported the sexual assault and was moved into segregation. Plaintiff told Dr. Schneider about Plaintiff's past experiences being sexually victimized and that being confined in segregation triggered past traumatic experiences, and Dr. Schneider told Plaintiff that mental health services would be provided in segregation to meet Plaintiff's needs.[15] On May 9, 2014, QMHP Faw interviewed Plaintiff, who said he was experiencing anxiety related to the alleged sexual assault. QMHP Faw reported Plaintiff's medical complaints to medical staff and scheduled Plaintiff to receive individual counseling from a QMHP, who saw Plaintiff on May 14, 2014, and noted that Plaintiff denied having any mental health issues. On May 29, 2014, Dr. Schneider prescribed six mental health sessions for Plaintiff between May 21 and June 20, 2014. QMHP Faw met with Plaintiff on May 21 and 29 and June 6 and 13, 2014, and another QMHP met with Plaintiff on June 10 and 18, 2014, when QMHP Faw was not at the prison. At the last session on June 18, 2014, the QMHP noted that Plaintiff "was seen and assessed for mental health issues. He denied having any mental health issues. The

---

[14] Dr. Patel, a psychiatrist contracted from outside of Green Rock, was responsible for prescribing Plaintiff's mental health medications, not Dr. Schneider. Plaintiff met with Dr. Patel on April 18 and May 16, 2014, which resulted in prescriptions for Paxil and Trazodone.

[15] Plaintiff remained in segregation for his own personal protection and because the investigation into the sexual assault was on-going.

13

QMHP did not see any visual signs to indicate otherwise." Two weeks later, Plaintiff was transferred out of Green Rock.

Plaintiff's dissatisfaction with the course of care he received across numerous appointments with Dr. Schneider and QMHP Faw does not state a § 1983 claim, and the record does not establish their deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Dr. Schneider did refuse Plaintiff's requests for contact with a rape crisis center when Plaintiff could not identify the center he wanted and after VDOC investigators determined the allegations of rape were unsubstantiated. Dr. Schneider explains that Plaintiff always had access to the VDOC's PREA Hotline if he had any issues or complaints. Moreover, single-cell assignments are not possible at Green Rock, and even if they were, Dr. Schneider did not have the authority to make decisions about housing assignments at Green Rock. Accordingly, Dr. Schneider and QMHP Faw are entitled to qualified immunity and summary judgment.

C. Claim 5

In claim 5, Plaintiff complains that Nurses Jones, Cobbs, and Dowdy did not render proper care after he collapsed and hit his head on the concrete floor. Plaintiff further complains that Nurse Harris denied his emergency grievance about the treatment for the fall. Neither complaint entitles Plaintiff to relief.

The record reveals that on April 22, 2104, Nurse Jones was called to Plaintiff's cell in the observation unit of Green Rock's medical department and saw Plaintiff lying on the floor. After he was escorted to an exam room, Plaintiff told Nurse Jones that all he remembered before falling was feeling dizzy and feeling pain in the left-side of his chest. Plaintiff also complained of pain in his left arm, right forehead, and back of his neck due to the fall.

14

Nurse Jones' visual examination revealed a small, raised bruised on Plaintiff's right forehead. Nurse Jones used an EKG, determined Plaintff's pupils were even and reactive, and measured his vital signs.[16] None of the examination results indicated to Nurse Jones that Plaintiff suffered an emergency condition. Nonetheless, Nurse Jones contacted the physician on call and reported her observations. The physician ordered an X ray of the right forehead, which was taken that morning and revealed no fracture to Plaintiff's skull.

Plaintiff further complains that Nurse Dowdy and Nurse Cobbs would not assist Nurse Jones, who allegedly was "disgruntled" and "had concerns with regard to treating." Contrary to Plaintiff's allegations, Nurse Jones avers that she did not ask Nurse Dowdy or Nurse Cobb for assistance at any time.

The next day, Nurse Harris received Plaintiff's emergency grievance that complained about the treatment by Nurse Jones. After reviewing Plaintiff's medical chart, Nurse Harris determined that the fall did not cause any serious or immediate danger. She replied to the emergency grievance, noting that there was no emergency and that Plaintiff could discuss his concerns with the physician at his next appointment in eight hours. Nurse Cobbs subsequently determined that Nurse Harris had adequately responded to Plaintiff.[17] On April 24, 2014, Plaintiff was prescribed 800 mg of ibuprofen for ten days.

The allegations about Nurse Dowdy and Nurse Cobbs refusing to help Nurse Jones does not describe any deliberate indifference to a serious medical need. Even assuming the allegations about Nurse Dowdy and Nurse Cobbs are true, Plaintiff fails to show any serious or significant

---

[16] The three measurements of Plaintiff's blood pressure ("BP") and heat rate ("BPM") were 155/108 laying BP at 110 BPM, 128/92 sitting BP at 108 BPM, and 148/100 standing BP at 122 BPM.

[17] Whether a typographical error was made on the response to the informal complaint not impact the analysis of the claim. (ECF No. 165-1 pg. 30.)

Case 7:14-cv-00270-JLK-RSB   Document 206   Filed 11/02/15   Page 15 of 17   Pageid#: 2126

injury caused by Nurse Dowdy's and Nurse Cobbs' unwillingness to help Nurse Jones. There is no dispute that Nurse Jones examined Plaintiff without needing assistance from either nurse. Furthermore, Nurse Jones' treatment does not shock the conscience, and Plaintiff's dissatisfaction with the manner or extent of Nurse Jones' treatment is an insufficient basis to recover under § 1983. Moreover, there is no evidence that the nurses or any other defendant could prescribe or order blood drawn for lab work, and Nurse Harris and Nurse Cobbs are not liable for reviewing Plaintiff's emergency grievance. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013). Accordingly, Nurses Jones, Cobbs, and Dowdy are entitled to qualified immunity and summary judgment.

## V.

In light of the evidence in the record and Plaintiff's allegations in the second amended complaint, Plaintiff's motions for summary judgment must be denied. Plaintiff cannot rely on buzzwords, labels, or conclusions to state a violation of a federal right. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Adams, 40 F.3d at 74. Verbal harassment and idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See, e.g., Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989). Although Plaintiff repeatedly invokes PREA and VDOC policies as bases of substantive rights, neither PREA nor violations of state laws or regulations by state officials provides a basis for relief under §1983. Furthermore, Plaintiff does not have an independent constitutional right to a rape counselor, and allegations of negligence are not sufficient to recover via § 1983. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994); Weller v. Dep't of Social Services,

16

901 F.2d 387, 392 (4th Cir. 1990); Ball v. Beckworth, No. CV 11-00037, 2011 U.S. Dist. LEXIS 109529, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011).

Plaintiff's argument that inmate sexual violence is not a "prison condition" subject to the exhaustion requirement of 42 U.S.C. § 1997e(a) is frivolous.  Porter v. Nussle, 534 U.S. 516, 531 (2002).  While OP 866.1 requires staff to accept any report of prison rape made through grievance procedure, the OP does not excuse an inmate from exhausting appropriate grievance procedures about prison rape.  Plaintiff is also not relieved of his duty to exhaust available administrative remedies because he believes staff fails to follow VDOC policies or procedures. While Plaintiff is able to appeal a grievance's rejection upon intake for failing to follow a procedural rule, that appeal does not make an improperly-filed grievance "exhausted" within the meaning of 42 U.S.C. § 1997e(a).  Plaintiff's challenge to the authenticity of most informal complaints attached in support of Defendants' motions for summary judgment does not address his failure to file or appeal regular grievances.[18]  None of the arguments in Plaintiff's motions for summary judgment are persuasive, and the motions are denied.

## VI.

For the foregoing reasons, I grant Plaintiff's motion for an extension of time and Defendants' motions for summary judgment and deny Plaintiff's motions for summary judgment.

ENTER: This 2nd day of November 2015.

_Jackson L. Kiser_
Senior United States District Judge

---

[18] Notably, Plaintiff filed copies of the original informal complaints and grievances at docket entry 11, including Green Rock's OP 866.1 implementation policy, which notes that emergency grievances are no substitute for filing regular grievances and appeals to exhaust administrative remedies.